# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF NEW YORK
### ALBANY DIVISION

In Re

**David A. Fitzpatrick,**

Debtor.

**Case No. 19-10187-1-rel**

**Chapter 7**

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

**MOTION WAIVES 30 DAY HEARING**

## MOTION FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY)

Specialized Loan Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of the Debtor having an address of 68 Clemons Center Road, Clemons, New York 12819 (the "Property"). Attached hereto as Exhibit 1 is a background information form required by local rules. In further support of this Motion, Movant respectfully states:

1.    A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor on January 31, 2019.

2.    The Debtor and Co-Borrower, Lorianne Fitzpatrick, have executed and delivered or is otherwise obligated with respect to that certain promissory note in the original amount of $102,850.00 (the "Note"). A copy of the note is attached hereto as Exhibit 2. Movant is an entity entitled to enforce the Note.

3.    Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtor and Co-Borrower under and with respect to the Note and Mortgage are secured by the Property. A copy of the Mortgage is attached hereto as Exhibit 3.

4.     All rights and remedies under the Mortgage have been assigned to the

Movant pursuant to that certain Assignment of Mortgage. A copy of the Assignment of

Mortgage is attached hereto as Exhibit 4.

5.     The statement of intentions calls for the Debtor to surrender the property.

6.     The legal description of the Property and recording information is set forth

in the Mortgage, a copy of which is attached hereto, and such description and

information is incorporated and made a part hereof by reference.

7.     Specialized Loan Servicing LLC services the loan on the Property

referenced in this Motion.  In the event the automatic stay in this case is modified, this

case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is

commenced on the mortgaged property, the foreclosure will be conducted in the name

of Movant or Movant's successor or assignee.  Movant, directly or through an agent,

has possession of the Note.  The Note is either made payable to Movant or has been

duly endorsed.  Movant is the original mortgagee or beneficiary or the assignee of the

Mortgage/Deed of Trust.

8.     As of February 18, 2019, the outstanding Obligations less any partial

payments or suspense balance is $127,405.04.

9.     The following chart sets forth the number and amount of contractual

payments due pursuant to the terms of the Note that have been missed by the Debtor

as of February 18, 2019:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 10 | 02/01/2016 | 11/01/2016 | $919.70 | $9,197.00 |
| 5 | 12/01/2016 | 04/01/2017 | $942.37 | $4,711.85 |
| 12 | 05/01/2017 | 04/01/2018 | $925.48 | $11,105.76 |
| 10 | 05/01/2018 | 02/01/2019 | $925.33 | $9,253.30 |
| Less contractual partial payments (suspense balance): | | | | ($657.58) |
| Total: | | | | $33,610.33 |

10.     The estimated market value of the Property is $90,000.00. The basis for such valuation is the Broker's Price Opinion dated October 30, 2018.

11.     Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to the Movant, is $127,405.04.

12.     Cause exists for relief from the automatic stay for the following reasons:

(a)     Movant`s interest in the Property is not adequately protected.

(b)     Postconfirmation payments required by the confirmed plan have not been made to Movant.

WHEREFORE, Movant prays that this court issue an Order terminating or modifying the stay and granting the following:

1.     Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.     That the Order be binding and effective despite any conversion of the bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.     That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4.      For such other relief as the Court deems proper.

Respectfully submitted,

/s/Wesley T. Kozeny
By: Wesley T. Kozeny, Esq.
Attorney for Movant
12400 Olive Blvd, Ste 555
St. Louis, MO 63141
Phone: (314) 991-0255
Fax:  (314) 567-8019
nybk@km-law.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**ALBANY DIVISION**

|  |  |
|---|---|
| In Re<br><br>**David A. Fitzpatrick,**<br><br>   Debtor. | **Case No. 19-10187-1-rel**<br><br>**Chapter 7**<br><br>**CERTIFICATE OF SERVICE** |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies under penalty of perjury that a copy of the

Notice of Motion and Motion for Relief from the Automatic Stay, and a copy of these

pleadings were mailed by U.S. First Class Mail on March 8, 2019 to the parties listed

below:

Edwin M. Adeson, Esq.
Attorney for Debtor
485 Glen Street
Glens Falls, NY 12801

David A. Fitzpatrick
Debtor
60 Broadway
Whitehall, NY 12887

Lorianne Fitzpatrick
Co-Borrower
60 Broadway
Whitehall, NY 12887

Paul Arthur Levine
Trustee
50 Beaver St
Albany, NY 12207

Office of the U.S. Trustee
U.S. Trustee
11A Clinton Ave, Room 620
Albany, NY 12207

Respectfully submitted,

 /s/ Wesley T. Kozeny
By: Wesley T. Kozeny, Esq.
Attorney for Movant
12400 Olive Blvd, Ste 555
St. Louis, MO 63141
Phone: (314) 991-0255
Fax:  (314) 567-8019
nybk@km-law.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re

**David A. Fitzpatrick,**

    Debtor.

**Case No. 19-10187-1-rel**

**Chapter 7**

**<u>ORDER LIFTING THE
AUTOMATIC STAY</u>**

Upon reading and filing the Notice of Motion dated March 8, 2019, the Motion for Relief from Automatic Stay of Wesley T. Kozeny, dated March 8, 2019 and the exhibits annexed thereto on behalf of Specialized Loan Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE3, by its attorney Kozeny & McCubbin, L.C. LLC, for an Order pursuant to 11 U.S.C. 362(d)(1) & (2) granting relief from the automatic stay to exercise all of its rights and remedies with respect to its security interest in the premises known as 376 Melrose Street, Rotterdam, NY 12306, (the "Property"); and there being no opposition thereto by the United States Trustee or Paul Arthur Levine, Trustee, and there being no opposition by the Debtor, or their attorneys, and sufficient cause appearing therefore; it is

**ORDERED**, that automatic stay is hereby modified pursuant to 11 U.S.C. 362(d) (1) & (2) to allow Specialized Loan Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE3 to exercise all of its rights and remedies with respect to its security interest in the Property, and it is further,

**ORDERED**, that the case trustee be added as a necessary party to any foreclosure proceedings so at to receive notice of the report of sale and any surplus money proceedings, and, closure of the bankruptcy case shall not constitute and abandonment of the trustee's interest, if any, in any surplus proceeds; and it is further

**ORDERED,** that the movant shall immediately provide an accounting to the trustee of any surplus monies realized.

# KOZENY & McCUBBIN, L.C. LLC

**ATTORNEYS AT LAW**
MISSOURI OFFICE:
12400 Olive Blvd.
Suite 555
St. Louis, MO 63141
Phone: (314) 991-0255
Fax: (314) 991-6755

March 8, 2019

Clerk of the Court
U.S. Bankruptcy Court
James T. Foley United
States Courthouse
445 Broadway, Suite 330
Albany, NY 12207

Re:    David A. Fitzpatrick
       Case No.: 19-10187-1-rel

Dear Clerk of the Court,

This firm represents Specialized Loan Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE3, a secured creditor in regards to the above-referenced Debtor.

Please allow this letter to confirm that the provisions of 362(e) are waived.

If you have any questions or concerns, please feel free to contact my office at the information set forth above.

Thank you for your time and consideration.

Respectfully,

 /s/  Wesley T. Kozeny
By: Wesley T. Kozeny, Esq.
Attorney for Movant
12400 Olive Blvd, Ste 555
St. Louis, MO 63141
Phone: (314) 991-0255
Fax:  (314) 567-8019
nybk@km-law.com

Cc:
Edwin M. Adeson  (via ECF)
Paul Arthur Levine-Trustee  (via ECF)



UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In Re:                                                    Case No. 19-10187-1-rel

David A. Fitzpatrick,                                     Chapter 7

                          Debtor.
-----------------------------------------------------------------X

### CERTIFICATION OF PAYMENT HISTORY ON THE NOTE AND MORTGAGE DATED JANUARY 6, 2006 AND RELATED INFORMATION

    Ami McKernan            , of full age, employed as Second Assistant Vice President Specialized Loan
Servicing, LLC as servicer for Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS
Capital I Inc. Trust 2006-HE3, hereby certifies the following information:

Mortgage Recorded on: February 10, 2006, in Washington County, in Document 2006-00023247.

Property Address: 68 Clemons Center Road, Clemons, New York 12819

Mortgage Holder:    Deutsche Bank National Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc.
Trust 2006-HE3

Movant's relationship to Mortgage Holder: Movant is Mortgage Servicer

Mortgagor(s)/Debtor(s): David Fitzpatrick and Lorianne Fitzpatrick/David A. Fitzpatrick

Bankruptcy Petition filed on: January 31, 2019

First Post-Petition Mortgage Payment Due: February 1, 2019

POST-PETITION PAYMENT HISTORY:

|   | Amount Due | Date Payment Was Due | How Payment was Applied (Mo./Yr.) | Amount Received | Date Payment Received | Check or Money Order Number |
|---|---|---|---|---|---|---|
| 1 | $925.33 | 02/01/2019 | | | | |
|   | | | | | | |
|   | | | | | | |
| TOTAL | $925.33 | | | | | |

MONTHLY POST-PETITION PAYMENTS PAST DUE:

1 Payment (February 2019) multiplied by $925.33 = $925.33

Itemize Past-Due Late Charges and Other Additional Charges Below. Attach a separate sheet, if necessary.

| Type of Charge | Date Incurred | Relative to Payment Due On | Amount |
|---|---|---|---|
| N/A | | | |
| | | | |
| Total Additional Charges Amount Due | | | |

## EACH CURRENT MONTHLY PAYMENT IS COMPRISED OF:

Principal & Interest..... $615.14
Escrow.................... $310.19
Insurance................ _____
Late Charge............ _____
Other..................... _____ (Specify)
TOTAL.................. $925.33

## MONTHLY PRE-PETITION PAYMENTS PAST DUE:

10 Payments (February 2016 - November 2016) multiplied by $919.70 = $9,197.00
5 Payments (December 2016- April 2017) multiplied by $942.37 = $4,711.85
12 Payments (May 2017- April 2018) multiplied by $925.48 = $11,105.76
9 Payments (May 2018- January 2019) multiplied by $925.33 = $8,327.97

## REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to your motion and indicate the exhibit number associated with the documents.

(1)     Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with the complete and legible copy of the mortgage and any assignments of the note and mortgage in the chain of title from the original mortgagee to the current moving party. (Exhibit B.)

(2)     Copies of documents establishing that Movant's interest in the real property or cooperative apartment was perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office of the Register of the county the property or cooperative apartment is located in. (Exhibit B.)

## CERTIFICATION FOR BUSINESS RECORDS

I CERTIFY THAT THE INFORMATION PROVIDED IN THIS FORM AND/OR ANY EXHIBITS ATTACHED TO THIS FORM (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1 AND 2 IMMEDIATELY ABOVE) IS DERIVED FROM RECORDS KEPT IN THE COURSE OF REGULARLY CONDUCTED ACTIVITY, MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY OR FROM INFORMATION TRANSMITTED BY, A

PERSON WITH KNOWLEDGE OF THOSE MATTERS, AND WERE MADE BY REGULARLY CONDUCTED ACTIVITY AS REGULAR PRACTICE.

I FURTHER CERTIFY THAT THE COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THE MOTION AS REQUIRED BY PARAGRAPHS 1 AND 2 IMMEDIATELY ABOVE, ARE TRUE AND ACCURATE COPIES OF THE ORIGINAL

DOCUMENTS THAT ARE IN THE POSSESSION OF THE MOVANT, EXCEPT AS FOLLOWS: _____.

I Ami McKernan   Second Assistant Vice President NAME AND TITLE> OF SPECIALIZED LOAN SERVICING, LLC AS SERVICER FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR MORGAN STANLEY ABS CAPITAL I INC. TRUST 2006-HE3, DECLARE (OR CERTIFY, VERIFY, OR STATE) UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED AT Highlands Ranch <CITY/TOWN>, CO <STATE> ON THIS 6th DAY OF March , 2019.

_____
   Ami McKernan  Second Assistant Vice President
Print Name/Title

Specialized Loan Servicing, LLC as servicer for
Deutsche Bank National Trust Company, as Trustee
for Morgan Stanley ABS Capital I Inc. Trust 2006-
HE3
PO Box 636007
Littleton, CO 80163

Exhibit 2

NOTE    Loan Number

| JANUARY 6 | , 2006 | CLEMONS | NEW YORK |
|---|---|---|---|
| [Date] | | [City] | [State] |

**68 CLEMONS CENTER ROAD, CLEMONS, NEW YORK 12819**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $102,850.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Decision One Mortgage Company, LLC.** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **8.34%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1ST** day of each month beginning on **MARCH 1, 2006.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **FEBRUARY 1, 2036,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **6060 J.A. Jones Drive, Suite 1000, Charlotte, North Carolina 28287** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$779.20.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **2.0 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**NEW YORK FIXED RATE NOTE**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3233 1/01
(page 1 of 2 pages)

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of, a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DAVID FITZPATRICK -Borrower

_____ (Seal)
LORIANNE FITZPATRICK -Borrower

_____ (Seal)
-Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE

DECISION ONE MORTGAGE COMPANY, LLC

BY: _____

Damon Merritt
Asst. Secretary

NEW YORK FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3233  1/01
(page 2 of 2 pages)

## PREPAYMENT RIDER TO NOTE

THIS PREPAYMENT RIDER is made this _____ **6TH** _____ day of _____ **JANUARY** _____, **2006** ,
and is incorporated into and shall be deemed to amend and supplement the Note of the same date given by
the undersigned (the "Borrower") in favor of **Decision One Mortgage Company, LLC** (the "Lender").

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of
Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in
writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the
monthly payments due under the Note.

I may make a partial prepayment without paying any prepayment charge. If I make a full prepayment
within one (1) year of the date of this Note, I agree to pay a prepayment charge of 5% of the amount
being prepaid. The Note Holder will use all of my prepayments to reduce the amount of principal that I
owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid
interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Prepayment Rider.

_____ (Seal)
DAVID FITZPATRICK                -Borrower

_____ (Seal)
LORIANNE FITZPATRICK             -Borrower

_____ (Seal)
                                 -Borrower

NEW YORK PREPAYMENT RIDER - FIXED RATE, FIRST MORTGAGE

Washington County Clerk
383 Broadway  Building A
Fort Edward, New York 12828

Doc#: 00070475
Bk: 2992 Pg: 52

60 2011 00070475

Volm-2992 Pg-52

**Instrument Number: 2011- 00070475**

As

**Recorded On:  July 06, 2011**

**Parties:  FITZPATRICK DAVID**    MORTGAGE MODIFICATION AGREEMENT
         **To**

**WELLS FARGO BANK NA DBA AMERICAS SERVICING COMPANY**     **Billable Pages:**     **8**

**Recorded By:  RITA KILLARY**       **Num Of Pages:**      **11**

**Comment:  2097/140**

---

**** Examined and Charged as Follows: ****

| | | | | | | |
|---|---|---|---|---|---|---|
| Mortgage | 80.00 | Cover Page | | 5.00 | | |
| Recording Charge: | 85.00 | | | | | |

| | Amount | Consideration Amount | RS#/CS# | | | |
|---|---|---|---|---|---|---|
| Tax-Mortgage | 60.00 | 8,044.79 | DC 444 | Basic | 40.00 | |
| DRESDEN | | | | Local | 0.00 Special Additional | 20.00 |
| | | | | Additional | 0.00 Transfer | 0.00 |
| Tax Charge: | 60.00 | | | | | |

Received
County Clerks Office
Jul 06,2011 03:18P
Washington County
Dona J. Crandall

---

**** THIS PAGE IS PART OF THE INSTRUMENT ****

I hereby certify that the within and foregoing was recorded in the Clerk's Office For:  Washington County, NY

**File Information:**                           **Record and Return To:**

Document Number:  2011- 00070475        FIRST AMERICAN TITLE

Receipt Number:.  234231                LOSS MITIGATION TITLE SERVICES

Recorded Date/Time:  July 06, 2011 03:18:05P   PO BOX 27670

Book-Vol/Pg:  Bk-R VI-2992 Pg-52       SANTA ANA CA 92799

Cashier / Station:  S Lemery /  Cashier Station 1

Dona J. Crandall

Dona J. Crandall
Washington County Clerk

This Instrument Was Prepared By:
**WELLS FARGO BANK, N.A., D/B/A**
**AMERICA'S SERVICING COMPANY**✺✺
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SOUTH CAROLINA  29715**

When recorded mail to: #█████████
First American Title  ██████████
Loss Mitigation Title Services 1079.1
P.O. Box 27670
Santa Ana, CA  92799
RE: FITZPATRICK - ALTA

Tax Parcel I.D. #:████████████████

_____  [Space Above This Line For Recording Data] _____

Original Recorded Date: February 10, 2006          **Loan No:**

Original Principal Amount: $102,850.00          **MERS Min No:** ████████████

# LOAN MODIFICATION AGREEMENT
**(Providing for Fixed Interest Rate)**

This Loan Modification Agreement ("Agreement"), made this 6th day of  July, 2010, between **DAVID FITZPATRICK AND LORIANNE FITZPATRICK**✺("Borrower") and **WELLS FARGO BANK, N.A., D/B/A AMERICA'S SERVICING COMPANY**✺✺"Lender"), and Mortgage Electronic Registration Systems, Inc. ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **February 10, 2006** and recorded in **Book or Liber 2097, at page(s) 140,  in the Office of the Clerk of  WASHINGTON County NEW YORK** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**68 CLEMONS CENTER ROAD, CLEMONS, NEW YORK 12819**✺
(Property Address)

the real property described being set forth as follows:
**SEE EXHIBIT 'A' ATTACHED HERETO AND MADE A PART HEREOF;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

S - ████████
B - ████████
L - ████████

Original Principal Amount: $ 102,850.00
Unpaid Principal Amount: $ 102,374.77
New Unpaid Principal Amount:
$ 110,419.56
New Money (Cap): $ 8,044.79

**LOAN MODIFICATION AGREEMENT—**Single Family—Fannie Mae UNIFORM INSTRUMENT Form 3179 1/01 (rev. 01/09)
CoreLogic Document Services
# T_MRSCFNM06MU-FX Rev. 02/12/10

Page 1 of 5

## Mortgage Schedule

Mortgage made by David Fitzpatrick and Lorianne Fitzpatrick to Mortgage Electronic Registration System, Inc., as nominee for Decision One Mortgage Company, LLC in the amount of $102,850.00 and interest, dated 1-6-2006 and recorded 2-10-2006 in/as Liber 2097 page 140.

This mortgage is being further assigned from Mortgage Electronic Registration System, Inc. (MERS), as nominee for Decision One Mortgage Company LLC to Wells Fargo Bank, N.A. D/B/A America's Servicing Company by an assignment dated 04/01/2011 and being duly recorded herein.

Doc#: 00070475
Bk: 2992 Pg: 55

EXHIBIT "A"

BORROWER(S): **DAVID FITZPATRICK and LORIANNE FITZPATRICK**

LOAN NUMBER ▮▮▮▮▮▮▮▮

LEGAL DESCRIPTION:
**ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING ON THE EAST SIDE OF CLEMONS CENTER RD., TOWN OF DRESDEN, WASHINGTON COUNTY, STATE OF NEW YORK AND BEING MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE EAST BOUNDARY OF DRESDEN ROAD IN THE CENTER OF A DIRT DRIVEWAY AT THE NORTHEAST CORNER OF THE HEREIN DESCRIBED PARCEL SAID POINT OF BEGINNING BEING THE SOUTHWEST CORNER OF LANDS OF KATHRYN HUNTINGTON AND LEONARD C. HUNTINGTON, JR. \(L.501 CP. 599\) THENCE FROM SAID POINT OF BEGINNING ALONG THE SOUTH LINE OF SAID HUNTINGTONS THE FOLLOWING TWO \(2\) COURSES; SOUTH 51DEGREES 02' 80" EAST, 25.00 FEET TO A POINT THENCE SOUTH 71DEGREES 25' 30" EAST, 120.50 FEET TO A POINT AT THE SOUTHEAST CORNER OF THE LANDS OF SAID HUNTINGTONS AND IN THE WEST LINE OF LANDS OF GUPTO KRASIN YOOTMAN \(L504 P. 580\) THENCE ALONG YOOTMANS WEST LINE SOUTH 24DEGREES 53' 30" WEST 240.10 FEET TO A FENCEPOST AT THE NORTHEAST CORNER OF LAND OF VIOLA M. AND PATRICK R. HUNTINGTON, JR. \(L 452 P. 237\) THENCE ALONG THE HUNTINGTONS NORTH LINE NORTH 50DEGREES 34DEGREES 54' 10" WEST 207.72 FEET TO A POINT ON THE LAST BOUNDARY OF DRESDEN CENTER ROAD THENCE ALONG THE EAST BOUNDS OF SAID ROAD THE FOLLOWING \(4\) COURSES: NORTH 22DEGREES 47' 15" EAST 27.48 FEET TO A POINT; THENCE NORTH 24DEGREES 32' 50" EAST, 34.52 FEET TO A 25' MAPLE TREE; THENCE CONTINUING NORTH 24DEGREES 32' 30" EAST 101.53 FEET TO A POINT; THENCE NORTH 29DEGREES 01' 00" EAST, 86.66 FEET TO THE POINT AND PLACE OF BEGINNING. APN: ▮▮▮▮▮▮▮▮▮▮**

ALSO KNOWN AS: **68 CLEMONS CENTER ROAD, CLEMONS, NEW YORK 12819**

CoreLogic Document Services
© CoreLogic, Inc.
# T_ARSCALL00MU Rev. 02/12/10

1.    As of **August 01, 2010**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$110,419.56**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.    Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.625%**, from **August 01, 2010**. Borrower promises to make monthly payments of principal and interest of U.S. **$615.14** , beginning on the **1st** day of **September, 2010**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **4.625%** will remain in effect until principal and interest are paid in full. If on **February 01, 2036** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.    If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.    Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b)    all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.    Borrower understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT Form 3179 1/01 (rev. 01/09)
CoreLogic Document Services
# T_MRSCFNM06MU-FX Rev. 02/12/10

Page 2 of 5

any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

6.    This Agreement modifies an obligation secured by an existing security instrument recorded in **WASHINGTON** County, have been paid. As of the date of this Agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is **$102,374.77** . The principal balance secured by the existing security instrument as a result of this Agreement is **$110,419.56**, which amount represents the excess of the unpaid principal balance of this original obligation.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT Form 3179 1/01 (rev. 01/09)
CoreLogic Document Services
# T_MRSCFNM06MU-FX Rev. 02/12/10

Page 3 of 5

Loan #

### In Witness Whereof, the Lender and I have executed this Agreement.

*Mortgage Electronic Registration System, Inc.*

Signature: 

**Printed Name:**    **Bryan Higgins**                                              *Lender*

**Title:**    **Assistant Secretary**

## MERS ACKNOWLEDGMENT

**STATE OF MINNESOTA**        )

**COUNTY OF DAKOTA**          )

On    **4/5/11**                        before me, *Viet Tran*

personally appeared *Bryan Higgins*                , the *Assistant Secretary*

of *Mortgage Electronic Registration System, Inc.*                                ,

on behalf of said entity, personally know to me (or proved to me on the basis of satisfactory evidence) to be

the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that

he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s)

on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the

instrument.

WITNESS my hand and official seal.

Signature: 

**VIET TRAN**
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

**Printed Name:**    *Viet Tran*                                              *(Seal)*

Doc#: 00070475
Bk: 2992 Ps:    59

_____    (Seal)
**DAVID FITZPATRICK**                                                            -Borrower

_____    (Seal)
**LORIANNE FITZPATRICK**                                                       -Borrower

_____    [Space Below This Line For Acknowledgment]    _____

State of NEW YORK                    )
County of _WASHINGTON_          )    ss. :
                                                )

On the __9__ day of __JULY__ in the year __2010__ before me, the undersigned, personally appeared **DAVID FITZPATRICK and LORIANNE FITZPATRICK** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individuals(s), or the person upon behalf of  which the individual(s) acted, executed the instrument.

_____
(Signature and office of individual taking acknowledgement)

**ERICA L LONGTIN**
01L06177259
Notary Public, State of New York
Qualified in WASHINGTON County
My commission expires NOVEMBER 13th, 20_11_

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT Form 3179 1/01 (rev. 01/09)
CoreLogic Document Services
# T_MRSCFNM06MU-FX Rev. 02/12/10

Page 4 of 5

**WELLS FARGO BANK, N.A., D/B/A AMERICA'S SERVICING COMPANY**

07/12/10 _____ (Seal)
                                                                              -Lender

By:        Halimo Y. Adem
           VP of Loan Documentation

Title:

_____ |Space Below This Line For Acknowledgment| _____

LENDER ACKNOWLEDGMENT

State of **Minnesota**            )
                                           )    ss. :
County of **Ramsey**            )

On the _12th_ day of _July_ in the year _2010_ before me, the undersigned, personally appeared
_Halimo Y Adem_, the VP of loan documentation of
_Wells Fargo Bank, NA F/B/A ASC_
a _National Association_, on behalf of said entity, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the persons(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Nedi B. Gulo
NOTARY PUBLIC
State of Minnesota
My Commission Expires 1-31-2015

_____
(Signature and office of individual taking acknowledgement)

Printed Name _Nedi  B. Gulo_                                           (Seal)

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT Form 3179 1/01 (rev. 01/09)
CoreLogic Document Services
# T_MRSCFNM06MU-FX Rev. 02/12/10

*Loan #*

## AFFIDAVIT UNDER SECTION 255 OF THE NEW YORK STATE LAW
### (MODIFICATION AGREEMENT)

I,  **VIENGMOR PHIDAVANH**  , being duly sworn, deposes and says;

1. That he/she is the agent for the owner and holder of the hereinafter described mortgage, and is familiar with the facts set forth herein.

2. A certain mortgage bearing the date of  **JANUARY 6, 2006**  , in the principal amount of **ONE HUNDRED TWO THOUSAND EIGHT HUNDRED FIFTY AND NO/100**
**($  102,850.00  ) was made by**
**DAVID FITZPATRICK AND LORIANNE FITZPATRICK**

as Mortgagor to

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR DECISION ONE MORTGAGE COMPANY LLC**
as original Mortgagee
Recorded on  **FEBRUARY 10, 2006**    in Liber 2097    Page 140    Instrument No.
Mortgage Tax Paid $  1,003.00

assigned to

Recorded on    in Liber    Page    Instrument No.

in the    **WASHINGTON**    County Clerk's Office, upon which the mortgage tax was duly paid thereon.

3. The instrument offered for recording herewith is a Modification made by
**DAVID FITZPATRICK AND LORIANNE FITZPATRICK**

to
**WELLS FARGO BANK, N.A., D/B/A AMERICA'S SERVICING COMPANY**

effective    **AUGUST 1, 2010**    , and to be recorded in the  **WASHINGTON**    County Clerk's Office.

4. The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded mortgage hereinabove first described with the exception of the following amount.

     a) Unpaid principal balance      $    102,374.77
     b) New unpaid principal balance   $    110,419.56
     c) b minus a equals           $     8,044.79
     d) Additional obligation secured by mortgage as modified

Additional mortgage recording tax of $  *60⁰⁰*    is therefore being paid on this Modification on the sum set forth in 4c.

That Exemption from further tax is CLAIMED under Section 255 of the Tax Law.

                                            **WELLS FARGO BANK, N.A., D/B/A AMERICA'S SERVICING COMPANY**

                                            Name: VIENGMOR PHIDAVANH
                                            Title: VP OF LOAN DOCUMENTATION

*Sworn to before me this*  5ᵗʰ *day of*  April  , 20 11

*Signature:*

*Notary Public, State of Minnesota*
*My Commission Expires:*  01/31/2015  *(Seal)*

**VIET TRAN**
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

CLDS#

Affidavit Under Section 255 of the New York State Law

## Mortgage Schedule

Mortgage made by David Fitzpatrick and Lorianne Fitzpatrick to Mortgage Electronic Registration System, Inc., as nominee for Decision One Mortgage Company, LLC in the amount of $102,850.00 and interest, dated 1-6-2006 and recorded 2-10-2006 in/as Liber 2097 page 140.

This mortgage is being further assigned from Mortgage Electronic Registration System, Inc. (MERS), as nominee for Decision One Mortgage Company LLC to Wells Fargo Bank, N.A. D/B/A America's Servicing Company by an assignment dated 04/01/2011 and being duly recorded herein.

Exhibit 3

**Washington County**
**Deborah R Beahan**
**County Clerk**
**FORT EDWARD, New York**

Book: 2097          Page: 140

**Document Number:** 2006- 00023247          **Document Type:** Mortgage
**Recorded Date:** 02/10/2006

**Parties:** FITZPATRICK, DAVID          **Pages Charged:** 14
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS IN          **Pages Scanned:** 15
**Comment:**

**Recorded By:** LAND RESEARCH SOLUTIONS INC

---

**\*\* Examined and Charged as Follows \*\***

Mortgage                    87.50
Coversheet                  10.00

**Recording Fee:**          77.50

| | Town | Serial # | Consideration |
|---|---|---|---|
| Tax-Mortgage | 1,003.00 DRESDEN | CW 3424 | 102,650.00 |
| Basic | 514.00 | | |
| Additional | 232.00 | | |
| Special Additional | 257.00 | | |
| Transfer | 0.00 | | |
| Tax Fee: | 1,003.00 | | |

Received
County Clerks Office
Feb 10,2006 01:31:30P
Washington County
Deborah R Beahan

---

**\*\* DO NOT REMOVE \*\***

**\*\* This Page is Part of the Document \*\***

I hereby certify that the within and foregoing was recorded in the Clerk's Office for:

**File Information**
**Document Number:** 2006- 00023247
**Recorded Date:** 02/10/2006 01:31 P
**Receipt Number:** 44498

**Mail Back**
DECISION ONE MORTGAGE COMPANY LLC
6060 J A JONES DRIVE
SUITE 800
CHARLOTTE NC 28287-

---

After Recording Return To:

Decision One Mortgage Company, LLC
6060 J.A. Jones Drive, Suite 1000
Charlotte, North Carolina 28287

———————————— [Space Above This Line For Recording Data] ————————————

Loan Number ▮▮▮▮
MIN: ▮▮▮▮

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "**Security Instrument.**" This document, which is dated **JANUARY 6, 2006**, together with all Riders to this document, will be called the "Security Instrument."

(B) "**Borrower.**" **DAVID FITZPATRICK**, and **LORIANNE FITZPATRICK**, whose address is **68 CLEMONS CENTER ROAD, CLEMONS, NEW YORK 12819** sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

(D) "**Lender.** Decision One Mortgage Company, LLC** will be called "Lender." Lender is a corporation or association which exists under the laws of **NORTH CAROLINA.** Lender's address is **6060 J.A. JONES DRIVE, SUITE 1000, CHARLOTTE, NORTH CAROLINA 28287.**

(E) "**Note.**" The note signed by Borrower and dated **JANUARY 6, 2006**, will be called the "Note." The Note shows that I owe Lender **ONE HUNDRED TWO THOUSAND EIGHT HUNDRED FIFTY AND 00/100ths** Dollars (U.S.**$102,850.00**) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by **FEBRUARY 1, 2036.**

(F) "**Property.**" The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) "**Loan.**" The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "**Sums Secured.**" The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "**Riders.**" All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| Adjustable Rate Rider | Condominium Rider | Second Home Rider |
| Balloon Rider | Planned Unit Development Rider | Other(s) [specify] |
| 1-4 Family Rider | Biweekly Payment Rider | |

**NEW YORK**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     Form 3033 1/01 *(page 1 of 13 pages)*

D.P.
LF

(J) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

(N) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

### BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

### DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at __68 CLEMONS CENTER ROAD__

| | [Street] | |
|---|---|---|
| __CLEMONS__ | | , New York __12819__ |
| | [City, Town or Village] | [Zip Code] |
| This Property is in ____WASHINGTON____ | County. It has the following legal description: | |

SEE ATTACHED SCHEDULE "A"

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3033  1/01  *(page 2 of 13 pages)*

DF.
eb

Doc#: 00023247
Bk: 2097 Ps: 143

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033 1/01  (page 3 of 13 pages)

D.F.
JG

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

(a) Borrower's Obligations. I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033 1/01  (page 4 of 13 pages)

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) **Lender's Obligations.** Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) **Adjustments to the Escrow Funds.** Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3033  1/01  *(page 5 of 13 pages)*

D.F.
lt

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033 1/01  *(page 6 of 13 pages)*

D.F.
et

(b) **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

**NEW YORK**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**        Form 3033  1/01  *(page 7 of 13 pages)*

D.P.
ef

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property, immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

**NEW YORK**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3033  1/01  (page 8 of 13 pages)

D.F.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**NEW YORK**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3033  1/01  *(page 9 of 13 pages)*



**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3033 1/01 *(page 10 of 13 pages)*

D.F.
lb

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033 1/01 *(page 11 of 13 pages)*

D.F.
Lf

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement", (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

This Security Instrument does not cover real property improved as described above.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033 1/01 *(page 12 of 13 pages)*

D.F.
eb

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 13 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____    _____ (Seal)
                                    **DAVID FITZPATRICK**              -Borrower

_____    _____ (Seal)
                                    **LORIANNE FITZPATRICK**           -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                                      -Borrower

State of NEW YORK             ) ss.:
County of ~~WASHINGTON~~
         Warren

On the _____6 +ᵗʰ_____ day of __January_____, in the year 2006, before me, __Adam D Betz__
_____, the undersigned, personally appeared **DAVID FITZPATRICK, and LORIANNE FITZPATRICK,**
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies),
and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s)
acted, executed the instrument.

My Commission Expires:          _____
                                Notary Public

**ADAM D BETZ**
Notary Public State of New York
No. 01BE6073434
Qualified in Warren County
Commission Expires April 22, 20 06

## SCHEDULE 'A'

All that certain Lot, Piece or Parcel of land, with the buildings and improvement there erected, situate, lying and being on the east side of Clemons Center Rd., Town of Dresden, Washington County, State of New York and being more particularly bounded and described as follows:

Beginning at a point on the east boundary of Dresden Road in the center of a dirt driveway at the northeast corner of the herein described parcel said point of beginning being the southwest corner of lands of Kathryn Huntington and Leonard C. Huntington, Jr. (L.501 Cp. 599) thence from said point of beginning along the south line of said Huntingtons the following two (2) courses;

South 51 degrees 02 minutes 80 seconds east, 25.00 feet to a point

Thence south 71 degrees 25 minutes 30 seconds east, 120.50 feet to a point at the southeast corner of the lands of said Huntingtons and in the west line of lands of Gupto Krasin Yootman (L504 P. 580)

Thence along Yootmans west line south 24 degrees 53 minutes 30 seconds west 240.10 feet to a fencepost at the northeast corner of land of Viola M. and Patrick R. Huntington, Jr. (L 452 P. 237)

Thence along the Huntingtons north line north 50 degrees 34 degrees 54 minutes10 seconds west 207.72 feet to a point on the last boundary of Dresden Center Road

Thence along the east bounds of said road the following (4) courses:

North 22 degrees 47 minutes 15 seconds east 27.48 feet to a point;

Thence north 24 degrees 32 minutes 50 seconds east, 34.52 feet to a 25' maple tree;

Thence continuing north 24 degrees 32 minutes 30 seconds east 101.53 feet to a point; thence north 29 degrees 01 minutes 00 seconds east, 86.66 feet to the point and place of beginning

Exhibit 4

**Washington County**
**Dona J. Crandall County Clerk**
383 Broadway Building A
Fort Edward, New York 12828

Doc#: 00070474
Bk: 2992 Pg:   50

Volm-2992 Pg-50

**Instrument Number: 2011- 00070474**
As
**Recorded On:  July 06, 2011**             **Assignment of Mortgage**

**Parties:**  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE
To
**WELLS FARG BANK NA DBA AMERICAS SERVICING COMPANY**        **Billable Pages:**        **1**

**Recorded By:  RITA KILLARY**                                       **Num Of Pages:**         **2**

**Comment:**

** ** Examined and Charged as Follows: ** **

Assignment of Mortgage          45.50          Cover Page                    5.00

**Recording Charge:**      **50.50**

Received
County Clerks Office
Jul 06,2011 03:18P
Washington County
Dona J. Crandall

** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For:  Washington County, NY

**File Information:**                              **Record and Return To:**
Document Number:  2011- 00070474          WELLS FARGO HOME MORTGAGE
Receipt Number:  234231                   2701 WELLS FARGO WAY
Recorded Date/Time:  July 06, 2011 03:15:39P          MINNEAPOLIS MN 55467
Book-Vol/Pg:  Bk-R Vl-2992 Pg-50
Cashier / Station:  S Lemery / Cashier Station 1



Dona J Crandall

Dona J. Crandall
Washington County Clerk

Doc#: 00070474
Bk: 2992 Pg:   51

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Wells Fargo Home Mortgage
2701 Wells Fargo Way
Minneapolis, MN 55467
X9999-018

Loan #██████████████
Date: 4/1/2011

MIN #: ██████████████
MERS Phone: 1-888-679-6377

## Assignment of Mortgage

For Value received,

Mortgage Electronic Registration Systems, Inc., (MERS) as nominee for Decision One Mortgage Company LLC
1901 E. Voorhees Street Suite C
Danville, IL 61834

Hereby sells, assigns and transfers to:

Wells Fargo Bank, N.A. D/B/A America's Servicing Company
1000 Blue Gentian Rd - mac X9999-01M
Eagan, MN 55121

Its successors and assigns all of its right, title, and interest to a certain Mortgage as follows:

Execution Date:   1/6/2006
Legal Name:       David Fitzpatrick and Lorianne Fitzpatrick

Beneficiary:      Decision One Mortgage, LLC

| | | |
|---|---|---|
| Address:  68 Clemons Center Road | City | Clemons |
| State:    NY | County: | Washington |

| | | |
|---|---|---|
| Recording Date:   2/10/2006 | LoanAmount:   $102,850.00 | |
| Document Number: | Book:  2097 | Page:  140 |
| Pin/Tax Number:          Folio: | Certificate #: | |

Lot, Block, and Section:
LEGAL DESCRIPTION AS REFERRED TO IN THE MORTGAGE LISTED ABOVE.

This Assignment is not subject to the requirements of section 275 of Real Property Law because it is an assignment within
the secondary mortgage market.

Date: 4/1/2011

Mortgage Electronic Registration Systems, Inc., (MERS)

Bryan Higgins, Assistant Secretary

State of Minnesota     ) ss.
County of Dakota

On the 1 day of April in the year 2011 before me, the undersigned, personally appeared Bryan Higgins, Assistant Secretary,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by
his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the
instrument, and that such individual made such appearance before the undersigned in Dakota County, Minnesota.

Prepared By: Bradley Benson
Assignment Drafted:   4/1/2011

Notary

VIET TRAN
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

Dona Crandall County Clerk
383 Broadway Building A
Fort Edward, New York 12828

Doc#: 00074790
Bk: 3070 Pg: 111

Volm-3070 Pg-111

**Instrument Number: 2012- 00074790**

As

Recorded On: **February 09, 2012**     **Assignment of Mortgage**

Parties: WELLS FARGO BANK NA DBA AMERICAS SERVICING COMPANY
　　　To
　　　MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMIN     **Billable Pages:**     1

Recorded By: **WELLS FARGO HOME MORTGAGE**     **Num Of Pages:**     2

Comment: ▮▮▮▮▮▮▮▮▮▮

**** Examined and Charged as Follows: ****

Assignment of Mortgage     50.00     Cover Page     5.00

　　Recording Charge:     **55.00**

Received
County Clerks Office
Feb 09,2012 09:15A
Washington County
Dona J. Crandall

**** THIS PAGE IS PART OF THE INSTRUMENT ****

I hereby certify that the within and foregoing was recorded in the Clerk's Office For: Washington County, NY

**File Information:**     **Record and Return To:**

　Document Number: 2012- 00074790     WELLS FARGO HOME MORTGAGE
　Receipt Number: 256508     X9901 L1R
　Recorded Date/Time: February 09, 2012 09:15:15A     PO BOX 1629
　　Book-Vol/Pg: Bk-R Vl-3070 Pg-111     MINNEAPOLIS MN 55440-9790
　Cashier / Station: S Lemery / Cashier Station 3



_Dona J. Crandall_
————————————————
Dona J. Crandall
Washington County Clerk

Doc#: 00074790
Bk: 3070 Pg: 112

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

## CORPORATE ASSIGNMENT OF MORTGAGE

Washington, New York
"FITZPATRICK"

**Record First**

MERS #:                          SIS #: 1-888-679-6377

Date of Assignment: February 2nd, 2012
Assignor: WELLS FARGO BANK, N.A. DBA AMERICA'S SERVICING COMPANY at 1 HOME CAMPUS, DES MOINES, IA 50328
Assignee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WELLS FARGO BANK, N.A., D/B/A AMERICA'S SERVICING COMPANY, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST. STE C., DANVILLE, IL 61834

Executed By: DAVID FITZPATRICK, AND LORIANNE FITZPATRICK To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR DECISION ONE MORTGAGE COMPANY, LLC, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 01/06/2006 Recorded: 02/10/2006 in Book/Reel/Liber: 2097 Page/Folio: 140 as Instrument No.: 2006-00023247 In the County of Washington, State of New York.

-Assigned Wholly by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR DECISION ONE MORTGAGE COMPANY, LIMITED LIABILITY COMPANY, LIMITED, ITS SUCCESSORS AND ASSIGNS TO WELLS FARGO BANK, NA DBA AMERICAS SERVICING COMPANY Dated: 04/01/2011 Recorded: 07/06/2011 in Book/Reel/Liber: 2992 Page/Folio: 50 as Instrument No.: 2011-00070474

Property Address: 68 CLEMONS CENTER ROAD, CLEMONS, NY 12819

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $102,850.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

WELLS FARGO BANK, N.A. DBA AMERICA'S SERVICING COMPANY
On   2/3/12

By: _____
Mike Murphy ,
Vice President Loan Documentation

STATE OF Minnesota
COUNTY OF Dakota

On the   3rd   day of   February   in the year   2012   before me, the undersigned, personally appeared   Mike Murphy   , Vice President Loan Documentation, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of Dakota, State of Minnesota.

WITNESS my hand and official seal,

_____
Julie Ann Prieto
Notary Expires: 1/31/2014
Dakota, Minnesota

JULIE ANN PRIETO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014

(This area for notarial seal)

Dona J. Crandall County Clerk
383 Broadway Building A
Fort Edward, New York 12828

Doc#: 00074791
Bk: 3070 Pg: 113

Volm-3070 Pg-113

Instrument Number: 2012- 00074791

As

**Recorded On:** February 09, 2012         **Assignment of Mortgage**

**Parties:** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC AS NOMINEE
To
DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE          **Billable Pages:**    2

**Recorded By:** WELLS FARGO HOME MORTGAGE          **Num Of Pages:**    3

**Comment:**

## ** Examined and Charged as Follows: **

Assignment of Mortgage          55.00          Cover Page          5.00

**Recording Charge:**          **60.00**

```
Received
County Clerks Office
Feb 09,2012 09:17A
Washington County
Dona J. Crandall
```

## ** THIS PAGE IS PART OF THE INSTRUMENT **

I hereby certify that the within and foregoing was recorded in the Clerk's Office For:  Washington County, NY

**File Information:**                                        **Record and Return To:**

Document Number: 2012- 00074791                  WELLS FARGO HOME MORTGAGE
Receipt Number: 256508                              X9901 L1R
Recorded Date/Time: February 09, 2012 09:17:21A    PO BOX 1629
Book-Vol/Pg: Bk-R Vl-3070 Pg-113                  MINNEAPOLIS MN 55440-9790
Cashier / Station: S Lemery / Cashier Station 3



Dona J. Crandall

Dona J. Crandall
Washington County Clerk

Doc#: 00074791
Bk: 3070 Pg: 114

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

## CORPORATE ASSIGNMENT OF MORTGAGE

Washington, New York
"FITZPATRICK"
SELLER'S LENDER ID#: P47

**Record Second**

MERS # ████ SIS #: 1-888-679-6377

Date of Assignment: February 2nd, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WELLS FARGO BANK, NATIONAL ASSOCIATION, DOING BUSINESS AS AMERICA'S SERVICING COMPANY, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR MORGAN STANLEY ABS CAPITAL I INC. TRUST 2006-HE3 at 1761 EAST SAINT ANDREW PLACE, SANTA ANA, CA 92705-4934

Executed By: DAVID FITZPATRICK, AND LORIANNE FITZPATRICK To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR DECISION ONE MORTGAGE COMPANY, LLC, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 01/06/2006 Recorded: 02/10/2006 In Book/Reel/Liber: 2097 Page/Folio: 140 as Instrument No.: 2006-00023247 In the County of Washington, State of New York.

-Assigned Wholly by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR DECISION ONE MORTGAGE COMPANY, LIMITED LIABILITY COMPANY, LIMITED, ITS SUCCESSORS AND ASSIGNS TO WELLS FARGO BANK, N.A. D/B/A AMERICA'S SERVICING COMPANY Dated: 04/01/2011 Recorded: 07/06/2011 in Book/Reel/Liber: 2992 Page/Folio: 50
-Note Modification or Extension Dated: 07/06/2010 Recorded: 07/06/2011 In Book/Reel/Liber: 2992 Page/Folio: 52 as Instrument No.: 2011-00070475, between DAVID FITZPATRICK AND LORIANNE FITZPATRICK and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WELLS FARGO BANK, N.A., D/B/A AMERICA'S SERVICING COMPANY, ITS SUCCESSORS AND ASSIGNS, $110,419.56
-Assigned Wholly by WELLS FARGO BANK, N.A. D/B/A AMERICA'S SERVICING COMPANY TO MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WELLS FARGO BANK, N.A., D/B/A AMERICA'S SERVICING COMPANY, ITS SUCCESSORS AND ASSIGNS Dated: 02/02/2012 Document to be recorded concurrently herewith

Property Address: 68 CLEMONS CENTER ROAD, CLEMONS, NY 12819

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $102,850.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WELLS FARGO BANK, NATIONAL ASSOCIATION, DOING BUSINESS AS AMERICA'S SERVICING COMPANY, ITS SUCCESSORS AND ASSIGNS
On ___2/3/12___

By: _____
Michael Murphy
Assistant Secretary

Doc#: 00074791
Bk: 3070 Pg: 115

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

On the __3rd__ day of _February_ in the year __2012__ before me, the undersigned, personally appeared __Michael Murphy__, Assistant Secretary, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of Dakota, State of Minnesota.

WITNESS my hand and official seal,

_Julie Ann Prieto_
Notary Expires: 1/31/2014
Dakota, Minnesota

JULIE ANN PRIETO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014

(This area for notarial seal)



## Broker Price Opinion

# 68 Clemons Center Rd, Clemons, NY 12819

CERTAINTY | INGENUITY | ADVANTAGE

Computershare

**This analysis is not an appraisal. It is intended only for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering or sale price of the real property.**

**Computershare**

Subject Property
68 Clemons Center Rd
Clemons, NY 12819

**BPO** BROKER PRICE OPINION

Inspection Date: 10/30/2018   (Exterior Form)

## Order Details

| | | | |
|---|---|---|---|
| **Client:** | SLS | **Mortgagors Name:** | DAVID FITZPATRICK |
| **Client Loan Number:** | | **Order Number:** | |
| **Tracking #1:** | | **Property ID:** | |
| **Broker Name:** | Heather Gibbs | **License Number:** | |
| **Broker Phone:** | (518) 644-2015 | **eSignature*:** | (*Signature on File) |
| **Broker Company:** | McDonald Real Estate Professionals, Inc | **Date Signed:** | 11/02/2018 |
| **Company Address:** | Street Address: 4856 Lake Shore Drive Pob 829  City, State Zip: Bolton Landing, NY 12814 | **Subject Address:** | Street Address: 68 Clemons Center Rd  City, State Zip: Clemons   NY   12819 |

## Subject Front / Neighborhood





## Price Estimate

| **AS-IS (60-90 Days)** | **$90,000** | **Repaired (60-90 Days)** | **$110,000** |
|---|---|---|---|
| **AS-IS (Quick Sale)** | **$81,000** | **Repaired (Quick Sale)** | **$99,000** |

| | | | |
|---|---|---|---|
| **Estimated Land Value** | $8,000.0 | **Total Repair Costs** | $10,000 |
| **PSF As-Is (Price per Sq Ft)** | $47.57 | **PSF Repaired (Price per Sq Ft)** | $58.14 |

## General Information

| | | | |
|---|---|---|---|
| **County** | Washington | **Overall Condition** | Average |
| **Development or Neighborhood Name** | None | **Curb Appeal** | Fair |
| **Zoning** | Residential | **Landscaping Condition** | Average |
| **Legal Description** | 1 Family Res | | |
| **Homeowners Association** | No | **Secured** | Yes |
| **HOA Name** | | **Occupancy Status** | Vacant |
| **HOA Mgmt. Co, Name** | | **If "Occupied", by whom?** | |
| **HOA Phone** | | **Subject conforms to neighborhood?** | Yes |
| **HOA Dues** | | **Are any Code Violations Posted?** | No |
| **HOA Dues Frequency** | | **Is the property subject to any rent controls?** | No |
| **HOA Dues Include** | | **Does the City or Municipality require Vacant Property Registration?** | No |
| **Environmental Hazards** | No known environmental hazards. | **Site Influences** | Proximity to Lake Champlain and Lake George |

## Tax Data, Sales and Listing History

| | | | |
|---|---|---|---|
| **Tax Assessed Value Date** | 01/01/2017 | **Last Known Sale Date** | 10/28/2002 |
| **Tax Assessed Value** | 78,000 | **Last Known Sale Price** | 37,000 |
| **Current Annual Real Estate Taxes** | 3,089 | **Taxes Delinquent?** | No |
| **Assessors Parcel Number (APN)** | | **Amount Delinquent** | |
| **Currently Listed for Sale (In MLS or FSBO)** | No | | |
| **Agent Name** | | **Original List Price** | 0 |
| **Agent Company** | | **Original List Date** | |
| **Agent Phone** | | **Current List Price** | |
| **DOM** | | **Current List Date** | |
| **Transaction Type** | | **Dwelling Access** | |
| **Listing Status** | | **MLS Number** | |

# Computershare

**Subject Property**

**BPO** BROKER PRICE OPINION

Inspection Date: 10/30/2018    (Exterior Form)

## Neighborhood & Market Information

| | | | |
|---|---|---|---|
| Density | Rural | Prior 12 Month Home Values Have | Stable |
| Predominant Occupancy | Owner | At a Rate of | 0 |
| Neighborhood Values Low | 25,000 | Housing Supply of Similar Homes | In Balance |
| Neighborhood Values High | 239,000 | Typical Marketing Time | >120 Days |
| Predominant Value | 95,000 | Vandalism Present in Area | No |
| Number of Homes in Direct Competition | 6 | Average DOM Active Comps | 345 |
| Number of Similar Homes Sold in Last 6 Months | 3 | Average DOM Sold Comps | 199 |
| Neighborhood Comments | Subject is located in slow but steady rural market.  Supply and demand are low.  REOs are rare.  Seller's concessions are becoming more common.  The main business of the area is tourism and farming. | | |



**Regular Average Sold Price and Number of Sales**
Glens Falls Single Family

price volume    62    1

## Area Sales Data

| Inventory Analysis | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | % Change | Overall Trend |
|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | % | |
| Absorption Rate (Total Sales/Months) | | | | % | |
| Total # of Comparable Active Listings | | | | % | |
| Months of Housing Supply (Total Listings/Absorption Rate) | | | | % | |

| Median Sale & List Price, DOM, List to Sales Ratio | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | % Change | Overall Trend |
|---|---|---|---|---|---|
| Median Comparable Sale Price | | | | % | |
| Median Comparable Sales DOM | | | | % | |
| Median Comparable List Price | | | | % | |
| Median Comparable Listings DOM | | | | % | |
| Median Sale Price as % of List Price | % | % | % | % | |

**Computershare**

Subject Property

**BPO** BROKER PRICE OPINION

Inspection Date: 10/30/2018 (Exterior Form)

## Deferred Maintenance

**Deferred Maintenance Present or Repairs Needed?** Yes

| # | Description | Cost | Comments |
|---|---|---|---|
| 1 | Roof | $ 4,000 | Section of metal peeling back |
| 2 | Cleanup | $ 1,000 | Various Items Scattered Around House |
| 3 | Exterior Cleaning | $ 1,500 | Area of Discloration |
| 4 | Back Porch | $ 3,500 | Appears to be Falling Apart |
| 5 | | $ | |
| 6 | | $ | |
| 7 | | $ | |
| 8 | | $ | |
| 9 | | $ | |
| 10 | | $ | |
| | **Total Repair Costs** | $ 10,000 | |

## Comparable Sales

| | Subject | Sale 1 | Sale 2 | Sale 3 |
|---|---|---|---|---|
| **Street Address** | 68 Clemons Center Rd | 43 Gillis Road | 2700 County Route 12 | 782 County Road 10 |
| **City, State Zip** | Clemons, NY 12819 | Clemons, NY 12819 | Whitehall, NY 12887 | Whitehall, NY 12887 |
| **Sale Date** | 10/28/2002 | 10/31/2018 | 06/22/2018 | 06/28/2018 |
| **Sale Price** | 37,000 | 75,000 | 90,100 | 126,500 |
| **Proximity To Subject (Miles)** | | 0.97 mi N | 7.06 mi S | 4.99 mi E |
| **Condition** | Fair | Fair | Average | Average |
| **Data Source** | Tax Records | MLS | MLS | MLS |
| **Property Type** | Single Family | Single Family | Single Family | Single Family |
| **Property Style** | Ranch / 1 Story | 2 Story | Ranch / 1 Story | Ranch / 1 Story |
| **Above Grade Sq Ft** | 1,892 | 1,352 | 1,384 | 1,400 |
| **# of Units** | 1 | 1 | 1 | 1 |
| **Lot Size** | 1.2 Acres | 2.5 Acres | 27878 Sq Ft | 36154 Sq Ft |
| **Year Built** | 1970 | 1930 | 1966 | 1976 |
| **Age** | 48 | 88 | 52 | 42 |
| **Total # Rooms** | 6 | 6 | 6 | 6 |
| **Bed / Full Ba. / Half Ba.** | 3 / 1 / 1 | 3 / 1 / 0 | 3 / 1 / 0 | 3 / 1 / 0 |
| **Financing Method** | | Private | FHA | Cash |
| **Transaction Type** | | Traditional Resale | Traditional Resale | Traditional Resale |
| **Owner** | Unknown | Owner Occ | Owner Occ | Owner Occ |
| **Seller Concessions** | 0 | 0 | 5,100 | 0 |
| **Price Per Sq Ft** | $19.56 | $55.47 | $65.10 | $90.36 |
| **DOM** | | 154 | 62 | 523 |
| **List Price At Sale** | | 77,000 | 97,000 | 134,900 |
| **Original List Price** | 0 | 77,000 | 97,000 | 159,000 |
| **Original List Date** | | 05/30/2018 | 04/21/2018 | 01/21/2017 |
| **Basement** | Yes | Yes | Yes | Yes |
| **Basement Type** | Walkout | Cellar (Fully Below Grade) | Cellar (Fully Below Grade) | Walkout |
| **Basement Total Sq Ft** | 1,800 | 650 | 1,300 | 1,400 |
| **Basement Finished Sq Ft** | 0 | 0 | 0 | 0 |
| **Garage Type** | None | Detached | Carport | Detached |
| **Number of spaces** | 0 | 2 | 2 | 2 |
| **Pool / Spa** | None | None | None | None |
| **View** | Residential | Residential | Residential | Residential |
| **Adjustment** | | 5,900 | 20 | -22,080 |
| **Adjusted Price** | | 80,900 | 90,120 | 104,420 |

**Computershare**

Subject Property
68 Clemons Center Rd

BPO BROKER PRICE OPINION

Inspection Date: 10/30/2018   (Exterior Form)

## Comparable Comments and Adjustment Justification

### Comparable Sale 1

Remarks: Much loved older home on very quiet road with bubbling brook and garage. In move-in condition, but does need some tlc. Built in 1930 with additional covered porch and enclosed porch both built in 1996. A must see - multiple rooms for bedrooms, sitting areas, large kitchen & dining area, and family office space. All this with 2.5 acres to design and play. Great for either a year around family home or a wonderful vacation hideaway. 5 miles from Lake Champlain public boat launch and 8 miles from Huletts Landing on Lake George. This comp is located 12.2 miles by road from Subject, not the 100+ miles this form calculated.   Adjustments: +$5,400 inf GLA, +$6,000 inf age, -$4,000 sup lot, -$1,500 sup garage.

### Comparable Sale 2

Remarks: nice ranch on large lot.  Adjustments:  -$5,100 seller's concessions,  +$5,080 inf GLA, +$2,000 inf lot, -$2,000 sup carport.

### Comparable Sale 3

Remarks: Nice country location. Glistening hardwood floors throughout. Fireplaces upstairs and down. Newer furnace, water heater, fuel tank and roofs. Lots of room for expansion in the walkout basement.  Adjustments:  +$4,920 inf GLA, +$1,000 inf lot, -$20,000 sup condition, -$3,000 sup basement, -$5,000 sup garage.

| Comparable Listings | Subject | List 1 | List 2 | List 3 |
|---|---|---|---|---|
| |  |  |  |  |
| Street Address | 68 Clemons Center Rd | 7 Manellville Road | 13061 State Route 22 | 9882 State Route 4 |
| City, State Zip | Clemons, NY 12819 | Whitehall, NY 12887 | Whitehall, NY 12887 | Whitehall, NY 12887 |
| List Date | | 05/18/2017 | 07/14/2017 | 10/03/2018 |
| Current List Price | | 92,000 | 99,500 | 105,000 |
| Proximity To Subject (Miles) | | 5.79 mi S | 4.18 mi S | 6.76 mi S |
| Condition | Fair | Average | Fair | Fair |
| Data Source | Tax Records | MLS | MLS | MLS |
| Property Type | Single Family | Single Family | Single Family | Single Family |
| Property Style | Ranch / 1 Story | Ranch / 1 Story | 2 Story | 1.5 Story |
| Above Grade Sq Ft | 1,892 | 1,529 | 1,972 | 1,545 |
| # of Units | 1 | 1 | 1 | 1 |
| Lot Size | 1.2 Acres | 1.2 Acres | 2.4 Acres | 1.55 Acres |
| Year Built | 1970 | 1910 | 1880 | 1925 |
| Age | 48 | 108 | 138 | 93 |
| Total # Rooms | 6 | 6 | 7 | 6 |
| Bed / Full Ba. / Half Ba. | 3 / 1 / 1 | 3 / 1 / 0 | 4 / 1 / 0 | 3 / 1 / 0 |
| Transaction Type | | Traditional Resale | Traditional Resale | Traditional Resale |
| Owner | Unknown | Owner Occ | Owner Occ | Owner Occ |
| Price Per Sq Ft | | $60.17 | $50.46 | $67.96 |
| DOM | 0 | 530 | 473 | 27 |
| MLS Status | | Active | Active | Active |
| Original List Price | 0 | 92,000 | 109,000 | 105,000 |
| Original List Date | | 05/18/2017 | 07/14/2017 | 10/03/2018 |
| Basement | Yes | Yes | Yes | Yes |
| Basement Type | Walkout | Walkout | Walkout | Cellar (Fully Below Grade) |
| Basement Total Sq Ft | 1,800 | 1,500 | 950 | 1,000 |
| Basement Finished Sq Ft | 0 | 0 | 0 | 0 |
| Garage Type | None | Attached | Detached | None |
| Number of spaces | 0 | 2 | 3 | 0 |
| Pool / Spa | None | None | None | None |
| View | Residential | Residential | Residential | Residential |
| Adjustment | | 630 | -300 | -220 |
| Adjusted Price | | 92,630 | 99,200 | 104,780 |

Computershare

Case 19-10187-1-rel    Doc 10    Filed 03/08/19    Entered 03/08/19 10:40:33    Desc Main

Subject Property

Document    Page 54 of 59

BPO BROKER PRICE OPINION

Inspection Date: 10/30/2018   (Exterior Form)

## Comparable Comments and Adjustment Justification

### Comparable List 1

Remarks: Country home with three bedrooms, kitchen, dining room, huge living room with fireplace. Lovely back yard and a garage in the basement. Adjustments: +$3,630 inf GLA, +$9,000 inf age, -$10,000 sup condition, -$2,000 sup garage.

### Comparable List 2

Remarks: Put your creativity and talents to work to transform this property into your very own work of art. Post and beam with pegs structure. Claw-foot tub. 4 bay garage. New wood oil combination hot air furnace. Entry, front and back porches. Public water. Adjustments: -$800 sup GLA, +$13,500 inf age, -$5,000 sup garage, -$8,000 sup lot.

### Comparable List 3

Remarks: Charming home with so much character with its original woodwork throughout the house. Beautiful French doors, hardwood floors. Newer hot water tank, newer roof, beautiful front porch to sit and relax, large backyard to enjoy with the family, 3 season porch, close to downtown. A little tlc and you can make this house your home. Adjustments: -$3,470 inf GLA, +$6,750 inf age, -$10,000 sup charm and curb appeal.

## Value Conclusion

| | | | |
|---|---|---|---|
| As-Is (60-90 Days) | $90,000 | Repaired (60-90 Days) | $110,000 |
| As-Is (Quick Sale) | $81,000 | Repaired (Quick Sale) | $99,000 |
| | Estimated Land Value | $8,000 | |

## Broker Addendum & Subject Comments

Subject is a larger than average ranch style home on a 1.2 acre lot. It needs repairs most of which are cosmetic. It has little to no curb appeal. It's located on a residential street in a rural area. The homes nearby are similar, and have similar appeal. Subject has no posted number or mailbox. The address verification photo is of the next mailbox from Subject. Subject is located in a slow rural market. The comps are the closest and most similar recent listings and sales to Subject. Comps were chosen for their proximity to Subject, their rural settings and similar condition to Subject. Years built, GLA and lot sizes all vary, but bracket Subject's characteristics, and adjustments were made. S3 is located 12.2 miles by road from Subject, not the 100+ miles calculated by this form.

## Quality Control Reviewer Comments

Subject data matches agent data source attached. Photos match prior. AS IS value of the subject property is bracketed by adjusted values of the sold comparables. There is a value variance based on the tax records being used for the current BPO order. Prior BPO order was completed using the SAM provided original appraisal. It has been determined that in most cases the tax records are the most recent source available and are therefore considered the best data source to be used. Due to the value variance based on the discrepancy between tax records and appraisal data, we recommend and interior appraisal to determine the most accurate size of the subject. Also, current report is listing several repairs and a fair condition rating. Prior report listed no repairs and an average rating.



Subject Property

BPO BROKER PRICE OPINION

Inspection Date: 10/30/2018 (Exterior Form)

**State Mandated Disclosures**

| | |
|---|---|
| **AR** | Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. Pursuant to Ark. Code. Ann. § 17-42-110(d), a broker price opinion or market analysis issued by a real estate licensee shall not contain the terms "market value", "appraised value" or "appraisal". |
| **DE** | Notwithstanding any language to the contrary contained herein, this Competitive Market Analysis is NOT an appraisal of the market value for property and is not intended to be used for any legal purpose including approving a mortgage loan, modification of a mortgage loan, divorce/property separation, estate settlement, bankruptcy proceedings or any other purpose where real estate value is needed. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. |
| **ID** | This report is not intended to meet the Uniform Standards of Professional Appraisal Practice. This broker's price opinion is not intended to be an appraisal of the market value of the property, and that if an appraisal is desired, the services of a licensed or certified appraiser should be obtained by a licensee licensed under the Idaho real estate appraisers act, chapter 41 title 54 Idaho Code |
| **IL** | This is a broker price opinion/comparative market analysis, not an appraisal of the market value of the real estate, and was prepared by a licensed real estate broker or managing broker, not by a State certified real estate appraiser. |
| **MD** | This analysis is not an appraisal. It is intended only for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering, or sale price of the real property. |
| **ME** | This opinion or appraisal was prepared solely for the client, for the purpose and function stated in this report and is not intended for subsequent use. It was not prepared by a licensed or certified appraiser and may not comply with the appraisal standards of the Uniform Standards of Professional Appraisal Practice. |
| **MI** | This is a market analysis, not an appraisal and was prepared by a licensed real estate broker or associate broker, not a licensed appraiser. |
| **MN** | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. |
| **MS** | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of real property for a mortgage loan origination, including first and second mortgages, refinances or equity lines of credit.<br><br>The licensee who prepared this opinion certifies that he/she is covered by errors and omissions insurance, to the extent required by state law, for all liability associated with the preparation of the opinion. |
| **NC** | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser shall be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of or interest in real property for a mortgage loan origination, including first and second mortgages, refinances, or equity lines of credit. |
| **NE** | This opinion or analysis is not an appraisal. It is intended only for the benefit of the addressee for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering, or sale price of the real property, for lending purposes in a transaction other than a federally related transaction, or for real property tax appeal purposes. This opinion or analysis is not governed by the Real Property Appraiser Act. |
| **NV** | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser shall be obtained. |
| **OR** | If licensee is also licensed by the Appraiser Certification and Licensure Board, the report is not intended to meet the requirements set out in the Uniform Standards of Appraisal Practice. This competitive market analysis or letter opinion is not intended as an appraisal and if an appraisal is desired, the services of a competent professional licensed appraiser should be obtained. |
| **PA** | This analysis has not been performed in accordance with the Uniform Standards of Professional Appraisal Practice which require valuers to act as unbiased, disinterested third parties with impartiality, objectivity and independence and without accommodation of personal interest. It is not to be construed as an appraisal and may not be used as such for any purpose. |
| **SC** | This market analysis may not be used for the purposes of obtaining financing in a federally related transaction. |
| **TX** | THIS IS A BROKER PRICE OPINION OR COMPARATIVE MARKET ANALYSIS AND SHOULD NOT BE CONSIDERED AN APPRAISAL OR OPINION OF VALUE. In making any decision that relies upon my work, you should know that I have not followed the guidelines for development of an appraisal or analysis contained in the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation. |
| **WA** | This brokers price opinion is not an appraisal as defined in chapter 18.140 RCW and has been prepared by a real estate licensee, licensed under chapter 18.85 RCW, who is not also state-certified or state-licensed as a real estate appraiser under chapter 18.140 RCW. |
| **WY** | This is an opinion of price and is not a certified appraisal of the market value of the property. If such an appraisal is desired, the service of a certified appraiser must be obtained. |

**Computershare**

Subject Property
68 Clemons Center Rd
Clemons, NY 12819

**BPO** BROKER PRICE OPINION

Inspection Date: 10/30/2018    (Exterior Form)

## General Addendum

This document is not an appraisal as defined by USPAP (Uniform Standards of Professional Appraisal Practice). It is not to be construed as an appraisal and may not be used as such for any purpose. The intended user of this report is the Client(s) named above and is to be used at the Client's sole discretion. This report is not intended as any guarntee of value and/or condition of the subject property and should not be relied on as such. Any opinion rendered in this report is that of the report preparer and does not necessarily reflect the views and opinions of Computershare LLC or its owners, affiliates and or assigns. All data contained herein is deemed accurate and reliable but not guaranteed.

Copyright (C) Computershare LLC

## Proximity Map



| Subject | 68 Clemons Center Rd. | Clemons, NY 12819 | Proximity |
|---|---|---|---|
| Sold Comp 1 | 43 Gillis Road | Clemons, NY 12819 | 0.97 mi N |
| Sold Comp 2 | 2700 County Route 12 | Whitehall, NY 12887 | 7.06 mi S |
| Sold Comp 3 | 782 County Road 10 | Whitehall, NY 12887 | 4.99 mi E |
| List Comp 1 | 7 Manellville Road | Whitehall, NY 12887 | 5.79 mi S |
| List Comp 2 | 13061 State Route 22 | Whitehall, NY 12887 | 4.18 mi S |
| List Comp 3 | 9882 State Route 4 | Whitehall, NY 12887 | 6.76 mi S |

## Subject Aerial View



**Computershare**

**BPO** BROKER PRICE OPINION

Inspection Date: 10/30/2018   (Exterior Form)

**Subject Property Photos** | **Front View**



**Left Side** | **Right Side**

 

**Street View** | **Address Verification**

 

**Computershare**

Subject Property

**BPO** BROKER PRICE OPINION

Inspection Date: 10/30/2018 (Exterior Form)

## Comparable Property Photos

**Sale 1**



43 Gillis Road

Clemons, NY 12819

Sold for $75,000 on 10/31/2018

**List 1**



7 Manellville Road

Whitehall, NY 12887

Listed for $92,000 on 05/18/2017

**Sale 2**



2700 County Route 12

Whitehall, NY 12887

Sold for $90,100 on 06/22/2018

**List 2**



13061 State Route 22

Whitehall, NY 12887

Listed for $99,500 on 07/14/2017

**Sale 3**



782 County Road 10

Whitehall, NY 12887

Sold for $126,500 on 06/28/2018

**List 3**



9882 State Route 4

Whitehall, NY 12887

Listed for $105,000 on 10/03/2018

**Computershare**

**BPO** BROKER
PRICE
OPINION

Inspection Date: 10/30/2018    (Exterior Form)

Additional Photos